IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| REBECCA BESHEARS, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| v. | ) | CASE NO. 2:04-cv-1014-MEF |
| | ) | (WO-Not Recommended for Publication) |
| GREYHOUND LINES, INC., *et al.*, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## MEMORANDUM OPINION AND ORDER

_____This lawsuit arises out of the collision of a Greyhound bus with an overpass.  At the time of the collision, Plaintiff Rebecca Beshears ("Beshears") was a passenger on the bus.  She claims to have been injured by the collision.  Beshears brings this action against the bus driver, Ryan Deshaun Williams ("Williams"), and Greyhound Lines, Inc. ("Greyhound")[1] pursuant to Alabama law.

This cause is before the Court on the Motion for Partial Summary Judgment (Doc. # 37) filed by Williams and Greyhound on November 30, 2005.  The Court has carefully considered the arguments made in support of and in opposition to the motion, and for the reasons set forth below, the Court finds that the motion is due to be GRANTED in part and DENIED in part.

---

[1] Williams and Greyhound are referred to collectively in this Memorandum Opinion and Order as "Defendants."

# I.   JURISDICTION AND VENUE

Subject-matter jurisdiction over this action is proper pursuant to 28 U.S.C. § 1332 (diversity).  The parties do not currently contest venue[2] or personal jurisdiction, and the Court finds adequate allegations in support of both personal jurisdiction and venue.

# II.   SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party

---

[2]   Early in the case, Defendants sought transfer of this case to the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C § 1404(a), but their motion was denied.

to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. *To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."* *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (emphasis added). A plaintiff must present evidence demonstrating that he can establish the basic elements of his claim. *Celotex,* 477 U.S. at 322. A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### III.   FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion for partial summary judgment. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts.

On November 1, 2002, Greyhound assigned Williams[3] to drive a bus from Atlanta to Mobile. Williams was unfamiliar with this route and had not been to several of the stops he would have to make, including a stop in Greenville, Alabama. Williams told a supervisor he was unfamiliar with the route. The supervisor gave Williams a "Route Guide" with written directions on where to drive the bus. As it turns out, the Route Guide was not current. The location of the bus stop in Greenville had changed in August of 2002. Thus, Williams had the wrong directions for the Greenville stop.

Following the directions in the Route Guide for the stop in Greenville, Williams drove the bus off of Interstate 65 and turned onto Highway 10 toward Greenville. While on Highway 10, he began looking for the bus stop described in the route guide. Williams saw that the road on which he was traveling went under an overpass. Williams was concerned

---

[3] At this time, Greyhound had employed Williams for about eighteen months. Prior to working for Greyhound, Williams worked as a city bus driver for the City of Los Angeles from sometime in 1999 to March of 2001. There is no evidence before this Court concerning Williams' driving record before Greyhound hired him. After Greyhound hired Williams, it sent him to a training course that lasted several weeks. During the course of this training, Williams was trained to turn around and seek a new route if he encountered an overpass that looked too small for a bus to fit under. In February of 2002, Greyhound surreptitiously evaluated Williams' driving and found it did not meet standards in certain respects. Greyhound criticized Williams for cutting into traffic without "sufficient clearance" and other items. Williams was informed of the deficiencies and ordered to mandatory training. Despite this order, Williams did not receive the remedial training and Greyhound did not follow up to ensure that he had completed additional training. On May 20, 2002, Williams struck another vehicle with a Greyhound bus. Williams was ordered to attend refresher training, but did not do so. On May 22, 2002, Williams was again involved in a collision with a vehicle while driving a Greyhound bus. In August of 2002, Williams underwent his annual review. Despite this review, Williams did not receive the refresher training which had previously been required.

that the overpass was too low for the bus.  There was not a sign on the overpass indicating the clearance.  Williams had driven past several warning signs indicating that the overpass was only 10 feet high and prohibiting trucks, but he did not see the signs because he was looking for the bus stop.  Williams slowed down.  He did not know if the bus, which was 11' 4 "in height,  would fit or not, but he thought it looked like it would.  He proceeded to drive slowly[4] under the bridge.

When the bus was about three feet under the overpass, its roof made contact.  Williams hit the brakes immediately and brought the bus to a complete and abrupt stop.   It is undisputed that neither weather, nor mechanical problems with the bus contributed to the collision.

Beshears, who was taking the bus to Mobile to see her fiancé, was thrown forward into the seat in front of her.  Her face struck the seat with sufficient force that she was thrown back into her seat.  Beshears had been talking on the phone at the time of impact, but she dropped the phone.  Although Beshears did not receive medical treatment at the scene of the accident and was able to continue on to Mobile by private conveyance, she did eventually receive more than $96,000 in medical treatment.

---

[4]  He estimated his speed at 5 miles per hour.  Beshears testified that the bus was going 5 to 10 miles per hour.  Defendants' expert testified that according to his calculations the bus could not have been going more than 5 miles per hour at the time of impact.  Because of the procedural posture of this case, this Court must view the facts in the light most favorable to Beshears.  Accordingly, the Court will assume that the bus was going between 5 and 10 miles per hour as Beshears testified.

On October 21, 2004, Beshears filed this suit against Williams and Greyhound.  The Complaint contains three counts.  (Doc. # 1).  In Count One, Beshears seeks compensatory and punitive damages from Williams and Greyhound[5] for alleged negligence, wantonness, or recklessness in the operation of the bus which caused it to collide with the overpass in Greenville.  In Count Two, Beshears seeks compensatory and punitive damages from Greyhound for negligent, wanton and reckless hiring, training, and supervision of Williams.  In Count Three, Beshears articulated claims directed only at the fictitious defendants who have previously been dismissed from this action.

On November 30, 2005, Defendants filed a Motion for Partial Summary Judgment (Doc. # 37).  Defendants seek summary judgment on Beshears' wantonness claim relating to the operation of the bus and Beshears' claims relating to the hiring, training, and supervision of Williams.  Beshears opposes the motion in all respects.

## IV.  DISCUSSION

### A.    Applicable Law

When a federal court exercises jurisdiction based upon diversity of citizenship, the court is bound to apply the substantive law of the state in which it sits.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  The *Erie* doctrine extends to choice-of-law questions, so that a court sitting in diversity must apply the forum state's conflict-of- law rules. *Strochak*

---

[5]  Count One and the other counts in the Plaintiff's Complaint, also seeks such damages from the "fictitious defendants."  By prior Order (Doc. # 18), all claims against fictitious defendants have been dismissed.

*v. Federal Ins. Co.,* 109 F.3d 717, 719-20 (11th Cir. 1997) (citing *Klaxon Co. v. Stentor Elec.*

*Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Because Beshears' claims sound in tort, Alabama's

choice-of-law rules require this Court to apply Alabama law:

> *Lex loci delicti* has been the rule in Alabama for almost 100 years.  Under this principle, an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred.

*Fitts v. Minnesota Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991) (citations omitted).

## B.  Beshears' Wantonness Claim Relating to Operation of the Bus

Defendants move for summary judgment on Beshears' wantonness claim relating to

the operation of the bus arguing that she cannot prove the essential elements of the claim.

Under Alabama law, to survive summary judgment on the issue of wantonness, a plaintiff

must provide substantial evidence creating a genuine issue of material fact that a defendant

acted with reckless or with conscious disregard to the rights or safety of others in his

operation of his vehicle.  *Ala. Code* § 6-11-20;[6] *Monroe v. Brown,* 307 F. Supp. 2d 1268,

---

[6]  The statute provides:

Punitive damages may not be awarded in any civil action, except civil actions for wrongful death pursuant to Sections 6-5-391 and 6-5-410, other than in a tort action where it is proven by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with disregard to the plaintiff . . . WANTONNESS. Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others.

Ala. Code § 6-11-20(b)(3) (1975).

1271 (M.D. Ala. 2004) (Thompson, J.) ("Wantonness . . . has been defined by the Supreme Court of Alabama as "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."); *Tolbert v. Tolbert,* 903 So. 2d 103, 115 (Ala. 2004) (affirming summary judgment on a wantonness claim arising from an automobile accident where evidence did not establish "more than a showing of some form of inadvertence on the part of the driver or that it rose to the required showing of some degree of consciousness on the part of the defendant that injuries are likely to result from his act or omissions") (citations omitted).[7]

> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wantonness, willful, or reckless misconduct is an acting, without knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury . . . Wantonness imports premeditation, or knowledge and consciousness that the injury is likely to result from the act done or from the omission to act . . .

*Tolbert,* 903 So.2d at 115 (internal quotations and citations omitted). "What constitutes wanton misconduct depends on the facts presented in each particular case." *Id.*

---

[7] In *Tolbert,* a child and his grandmother were traveling by car in a light rain. As the car traveled downhill, the child's grandmother failed to negotiate an "S" curve, skidded into the opposing lane of traffic and collided with another vehicle. The child, the child's grandmother, and the driver of the other vehicle were all killed. The child's father filed a wrongful death action against the grandmother's estate, claiming the grandmother was operating her vehicle wantonly. *See* 903 So. 2d 103.

Although, under *Erie,* this Court must apply the Alabama definition of wantonness, "in diversity cases federal courts apply a federal rather than state test in determining the sufficiency of the evidence to create a jury question . . ." *Salter v. Westra,* 904 F.2d 1517, 1524 (11th Cir. 1990). In the context of summary judgment in the federal arena, the test is whether, in viewing the substantial evidence in the light most favorable to the plaintiff, a genuine issue exists for trial. *Monroe,* 307 F. Supp. 2d at 1271.

To survive summary judgment, Beshears must establish a genuine issue of fact as to whether Williams (1) acted consciously when he attempt to drive the bus under the 10 foot overpass, and (2) was conscious, based on existing conditions, that injury was a likely or probable result of his actions. *See Monroe*, 307 F. Supp. 2d at 1272.[8] Under the first prong

---

[8] In *Monroe,* tractor-trailer driver Brown rear-ended the Monroes' vehicle while they were sitting at a red traffic light in Montgomery, Alabama. 307 F. Supp. 2d 1268. The collision occurred when Brown, thinking that the Monroes would proceed through the intersection under the yellow caution signal, accelerated to proceed through as well. The Monroes, however, chose not to proceed through the intersection, they stopped. Brown's tractor-trailer collided with the Monroes' vehicle. The Monroes claimed negligence and wantonness seeking compensatory and punitive damages. Brown filed a motion for summary judgment on the Monroes' wantonness claim. *Id.* Based on the detailed factual evidence which presented a clear picture of the events underlying the collision, the court found that Brown decided to accelerate as he approached the intersection in an attempt to run a yellow light, "a conscious act that, at least, contributed to the accident." *Id.* at 1273. The court also found that Brown was conscious, based on the existing conditions, that injury was a likely or probable result of his acceleration in his attempt to run the yellow light. The court noted that Brown "had a duty to begin to slow his vehicle *and* keep sufficient distance between his tractor-trailer and the [Monroe vehicle] as they approached the yellow light so that he would not collide with the Monroes should [they] decide to stop rather than proceed through the yellow light. Instead, Brown consciously chose to accelerate and, thereby, consciously created a greater danger for all concerned." *Id.* at 1275 (emphasis in original). Brown's motion for summary judgment was denied under the summary judgment standard set out

of the *Monroe* analysis, the substantial evidence, viewed in the light most favorable to Beshears, reflects that Williams intentionally attempted to drive the bus under the overpass. There is no evidence, however, that he did so knowing that the overpass was too low for his bus to fit through.  Moreover, in the circumstances of this case, the second prong of the *Monroe* analysis is even more problematic.  This Court is asked to infer a state of mind, a conscious disregard, or a lack thereof on the part of Williams by attempting to drive the bus under the overpass at a very slow rate of speed.  In this case, the Court finds that "there is a total lack of evidence from which the jury could reasonably infer wantonness." *McDougle v. Shaddrix*, 534 So. 2d 228, 231 (Ala. 1988).  In viewing the evidence presented in the light most favorable to Beshears, this Court finds that summary judgment is appropriate on Beshears' wantonness claims arising out of Williams' operation of the bus.  Nothing in this opinion should be construed as an impediment to Beshears' alternative claim for alleged negligence in the operation of the bus.

## C.  Beshears' Claims Relating to Hiring, Training, and Supervision of Williams

Beshears alleges that Greyhound was both negligent and wanton in its hiring, training, and supervision of Williams. There is no evidence before this Court from which a reasonable jury could find that Greyhound was negligent or wanton in its hiring of Williams.

---

herein (whether, in viewing the substantial evidence in the light most favorable to the plaintiffs, a genuine issue exists for trial). *Id.* at 1271, 1276. Although the facts before this Court in the instant case are somewhat distinguishable from the facts of *Monroe,* the factual analysis set out in *Monroe* is current, instructive, and persuasive.

Accordingly, to the extent that Greyhound seeks summary judgment on the claim of negligent or wanton hiring of Williams, its motion is due to be GRANTED. However, with respect to the remaining claims relating to alleged negligence or wantonness in the training and supervision of Williams, the Court finds that there is sufficient evidence to require resolution of such claims by a jury. Accordingly, to the extent that Greyhound seeks summary judgment on the claims of negligent or wanton training or supervision of Williams, its motion is due to be DENIED.

## V.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion for Partial Summary Judgment (Doc. # 37) is GRANTED with respect to Beshears' claims against Defendants for wantonness in the operation of the bus and with respect to Beshears' claims for negligence or wantonness in the hiring of Williams and DENIED in all other respects.

DONE this the 30th day of January, 2006.


_____
            /s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE